**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NIKEA BYERS, et al., | |
| *Plaintiffs,* | CIVIL ACTION |
| v. | NO. 26-448 |
| SUNRISE SENIOR LIVING, LLC, et al., | |
| *Defendants.* | |

**Pappert, J.**                                                    **June 10, 2026**

<u>**MEMORANDUM**</u>

The Sunrise Senior Living 401(k) Plan allows employees of Sunrise Senior Living LLC to save for retirement.  Nikea Byers and four other participants in the Plan allege that its administrators violated the Employee Retirement Income Security Act by selecting or retaining an imprudent investment option.  The defendants move to transfer the case to the United States District Court for the Eastern District of Virginia, and the Court grants their motion.

I

Headquartered in McLean, Virginia, Sunrise Senior Living created the Sunrise Senior Living 401(k) Plan.  (Am. Compl. ¶¶ 31, 48, Dkt. No. 10.)  By 2024, the Plan had over $360,105,000 in assets and 23,000 participants.  (*Id.* ¶¶ 10–11.)  Sunrise Senior Living also established the 401(k) Plan Fiduciary Committee to manage the Plan.  (*Id.* ¶ 32.)

Among the Plan's participants were Nikea Byers, Gabrielle Winans, Kenneth Smith, Tanisha Madison and Wanda Sinkler.  (*Id.* ¶¶ 24–28.)  In this class action, they sued Sunrise Senior Living, the Committee and the Committee's members alleging:

1

(1) the Committee violated ERISA by selecting or retaining an imprudent investment option—namely a guaranteed income fund managed by Prudential; (2) Sunrise Senior Living failed to adequately monitor the Committee's investment decisions; and (3) the defendants violated ERISA's prohibited-transaction provision by permitting Prudential to earn excessive fees for managing the guaranteed income fund at issue. (*Id.* ¶¶ 164–86.)

## II

Section 1404(a) of Title 28 provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The plaintiffs do not dispute that they could have filed suit in the United States District Court for the Eastern District of Virginia. *See* 29 U.S.C. § 1132(e)(2). To answer whether a transfer is convenient and in the interest of justice, the Court considers six private-interest and six public-interest factors. *Jumara v. State Farm Ins.*, 55 F.3d 873, 879–80 (3d Cir. 1995).

## A

The private-interest factors are: (1) the plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records to the extent that the files could not be produced in the alternative forum. *Id.* at 879.

2

The first factor is neutral. The Court would normally give the plaintiffs' choice of Pennsylvania "paramount consideration." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). But the "degree of deference given to a plaintiff's forum choice varies with the circumstances." *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001) (en banc). And here, the circumstances counsel against deference.

To begin, this is a class-action lawsuit. (Am. Compl. ¶¶ 41–47.) Courts typically give less deference to a plaintiff's forum choice in class actions for two reasons. *See Santomenno v. Transamerica Life Ins.*, No. 11-736, 2012 WL 1113615, at *5–6 (D.N.J. Mar. 30, 2012); *see also In re Warrick*, 70 F.3d 736, 741 n.7 (2d Cir. 1995) (per curiam) ("[T]he plaintiff's choice of forum is a less significant consideration in a . . . class action than in an individual action."); *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) (same). First, "the participation of the class representative is generally minimal." *Santomenno*, 2012 WL 1113615, at *5. Second, where "there are hundreds of potential plaintiffs," the "claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened." *Koster v. (Am.) Lumbermens Mut. Cas.*, 330 U.S. 518, 524 (1947). This logic applies even in the ERISA context. *See Santomenno*, 2012 WL 1113615, at *5–6. The plaintiffs seek to include in the class all Sunrise Senior Living employees who participated in the Plan, about 23,000 individuals scattered all over the Nation. Only one named plaintiff lives in Pennsylvania; the other four live in Georgia, North Carolina, Missouri and Maryland. (Am. Compl. ¶¶ 24–28.) A little more than 700 potential class members live in Pennsylvania, whereas 1,800 live in Virginia. (Michael Jackson Decl. ¶ 11, Dkt. No. 13-2.) The remaining 20,000-or-so potential class members live across the Nation. Because nothing indicates that a

3

"disproportionate share" of the potential members of the class live in Pennsylvania, *In re Warrick*, 70 F.3d at 740 n.7, the Court defers less to the plaintiffs' choice to litigate in Pennsylvania.

Moreover, the plaintiffs' core allegations relate to Virginia.  If a plaintiff's forum choice "has little connection with the operative facts of the lawsuit" a court need not blindly afford that choice deference.  *U.S. Fire Ins. v. World Trucking, Inc.*, No. 07-CV-1153, 2008 WL 413310, at *2 (D.N.J. Feb. 13, 2008) (citation omitted).  The plaintiffs allege the Committee breached its duty of prudence by investing in Prudential's guaranteed income fund and that Sunrise inadequately monitored the Committee.  Sunrise, headquartered in Virginia, established the Committee to manage the Plan.  (Michael Jackson Decl. ¶ 5.)  A total of seventeen Sunrise employees sat on the Committee during the relevant period.  (*Id.* ¶ 8.)  Though the Committee met virtually, ten worked in Virginia none in Pennsylvania.  (*Id.*)  Thus, the Committee (created by a Virginia-based company) made the relevant decisions to invest in Prudential's guaranteed income fund outside Pennsylvania—and a majority of the Committee's members worked in Virginia.  The operative facts of this lawsuit have a more significant connection to Virginia than Pennsylvania.

The plaintiffs respond that the "breaches occurred in Plaintiffs' accounts," (Pls.' Resp. in Opp'n to Defs.' Mot. to Transfer at 17, Dkt. No. 15), suggesting their bank accounts suffered economic harm because of the defendants' conduct.  It is unclear how this argument helps them.  Only one named plaintiff lives in Pennsylvania.  And more potential class members live in Virginia than Pennsylvania.  In any event, the

4

plaintiffs' allegations target the defendants' *decision-making process*, which again, has a significant connection to Virginia.

The second factor favors the defendants.  They prefer to litigate in Virginia, weighing in favor of a transfer.  *See Virts v. Prudential Life Ins. of Am.*, 950 F. Supp. 2d 101, 106 (D.D.C. June 18, 2013) (explaining it is legitimate to consider the location of the defendant's principal place of business in evaluating whether to grant a motion under § 1404(a)).

The third factor also favors the defendants.  The operative facts underlying the plaintiffs' claims appear to have arisen in Virginia.  Making this determination "is not always an exact science."  17 James Wm. Moore et al., *Moore's Federal Practice* § 111.13[1][d][ii], (database updated 2026).  It depends on the plaintiffs' "theories of liability."  *Id.*  Again, the plaintiffs allege the Committee wrongly invested in Prudential's guaranteed income fund and Sunrise inadequately monitored the Committee.  Sunrise, a Virginia-based company, established the Committee to manage the Plan.  (Michael Jackson Decl. ¶ 5.)  And though the Committee met virtually, a majority of its members worked in Virginia, and none worked in Pennsylvania.  (*Id.* ¶ 8.)  Because the operative facts underlying the plaintiffs' claims target the defendants' decision-making process, which has a significant connection to Virginia, it appears their claims arise in that State.  *See Keesler v. Tractor Supply Co.*, No. 24-CV-1612, 2025 WL 1770503, at *4 (M.D. Pa. June 26, 2025) (holding a "majority of the operative facts occurred" where "the Plan at the heart of the alleged ERISA violation is administered and operated" because the "discussions and formulation of the Plan presumably occurred" there); *Janosky v. United Surgical Partners Int'l, Inc.*, No. 25-68,

2025 WL 3022319, at *8 (E.D. Ky. Oct. 29, 2025) (holding the "operative facts" "occurred" "where the plan is administered").

The convenience of the parties is neutral. Virginia is inconvenient for one plaintiff because she lives in Pennsylvania and asserts it would be difficult to travel to Virginia. The other four plaintiffs, however, do not live in Pennsylvania, and nothing indicates it would be inconvenient for them to litigate in Virginia. Moreover, the defendants argue it would be more convenient for the four plaintiffs to litigate in Virginia because they live closer to that State than Pennsylvania. The plaintiffs do not meaningfully address this argument. But the defendants also do not explain why it would be inconvenient for them as indicated by their relative financial condition to litigate in Pennsylvania. On balance, the Court cannot say whether this factor favors either party.

The convenience of the witnesses is neutral too. The defendants argue their investment advisor—a key witness in this case—lives in Maryland, so she can be compelled to testify in the Eastern District of Virginia but not in the Eastern District of Pennsylvania. *See* Fed. R. Civ. P. 45(c). Perhaps, but this factor requires that the witness "actually be unavailable for trial" in Pennsylvania. *Jumara*, 55 F.3d at 879. And the defendants fail to explain why their investment advisor would be unwilling to testify in Pennsylvania voluntarily. *See Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 731–32 (D. Del. Nov. 16, 2012).

The last factor—the location of books and records—is neutral. Though the defendants argue the books and records are in Virginia, they do not explain why those

materials could not be produced in Pennsylvania.  All in all, two private-interest factors favor a transfer and four are neutral.

B

The public-interest factors are: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with applicable state law in diversity cases.  *Jumara*, 55 F.3d at 879–80.

The first factor is a wash; federal courts in either Virginia or Pennsylvania could enforce the ultimate judgment in this case.  The defendants combine the second and third factors, arguing litigation in the Eastern District of Virginia would make trial easier and reduce the burden on the Eastern District of Pennsylvania.  One "factor militating in favor of transfer" is "whether the court in which the action originally is brought is more congested than the district to which transfer is sought."  17 James Wm. Moore et al., *supra*, § 111.13[1][k].  The Eastern District of Virginia has fewer pending cases than the Eastern District of Pennsylvania, and it takes less time for a case to get to trial in the Eastern District of Virginia.  *See* United States Courts, *Federal Judicial Caseload Statistics 2025 Tables*, https://www.uscourts.gov/data-news/reports/statistical-reports/federal-judicial-caseload-statistics/federal-judicial-caseload-statistics-2025-tables (last visited June 8, 2026) (Tables C-1 & T-3).  That the Eastern District of Virginia is less congested favors transfer.  It's also appropriate to note a "practical consideration[]" that "could make the trial easy," *Jumara*, 55 F.3d at 879—a

7

consideration raised by the defendants earlier: that the Eastern District of Virginia has subpoena power over one of the defendants' key witnesses.  If a "material non-party witness[] [is] not subject to the compulsory process of one of the courts, but [is] within the subpoena power of the other," a transfer weighs slightly "in favor of the latter district."  17 James Wm. Moore et al., *supra*, § 111.13[1][g].

The fourth factor favors transfer.  There is a public interest in having cases adjudicated where their operative facts occurred.  *See id.* § 111.13[1][l].  And as explained, the plaintiffs' allegations have a significant connection to Virginia and little, if any, to Pennsylvania.  The parties do not address the fifth and sixth factors.

On balance, the private and public interests favor transferring this case to the Eastern District of Virginia.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*

Gerald J. Pappert, J.

8